### Richmond

DOROTHY T. HOFFNER,
ADMINISTRATRIX, ETC.

v.

LOUIS VICTOR KREH

Record No. 811422.

March 9, 1984.

Present: All the Justices.

*Matthew B. Murray (Richmond and Fishburne,* on briefs), for appellant.

*David Craig Landin (McGuire, Woods and Battle,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Dorothy T. Hoffner, Administratrix of the Estate of Tony M. Hoffner, deceased, instituted this action against Louis Victor Kreh, Jr.,* for the wrongful death of her son. The motion for judgment alleged that Hoffner died from injuries sustained when he was struck by an automobile operated by Kreh and that Kreh's negligence proximately caused the decedent's death.

At trial, when the jury was unable to agree upon a verdict, the court declared a mistrial. Pursuant to Rule 1:11, Kreh renewed the motion to strike the evidence which he had made at the conclusion of the plaintiff's evidence and again after all the evidence had been presented. The trial court granted the motion and on June 22, 1981, entered final judgment in favor of Kreh. On ap-

---

* The pleadings in the trial court identified the defendant-appellee as Louis Victor Kreh, Jr. On appeal, he has been identified as Louis Victor Kreh, and we will refer to him in this opinion as Kreh.

peal, the Administratrix has assigned error to this ruling and to certain rulings as to the admissibility of evidence.

The accident occurred about 1:30 a.m. on June 22, 1979, on Route 29, a four-lane, divided highway, a short distance south of the Town of Madison. The weather was cloudy, but the unlighted highway was dry. Kreh, driving north in the right-hand lane felt a bump, stopped his car, turned around, and returned to see what he had hit. He discovered that he had run over and fatally injured Hoffner. The decedent, who was seventeen years old, was five feet seven and a half inches tall and weighed 220 pounds. He was wearing dark clothes and had dark hair and a tanned complexion.

The evidence, taken in the light most favorable to the plaintiff, showed that Hoffner was lying facedown with his head to the north in the right northbound lane of the highway when Kreh's car ran over him. State Trooper W. L. Lyle, the investigating officer, found that Hoffner's body lay parallel to the center line, approximately one foot eight inches from the right shoulder on the east side of the highway. The accident occurred near the top of a long, gradual, and straight incline just south of a "Tastee Freez" sign. Kreh informed Trooper Lyle that his headlights were on low beam when the accident happened.

It could not be determined whether Hoffner was conscious at the time of the accident. The medical evidence showed that he had a blood alcohol content of .11 at the time of his death, a level indicating intoxication but not so high as to render a person unconscious. Hoffner had a hematoma on his left temple which could have been caused by Kreh's car or by a prior injury, though there was no evidence of a prior injury. Hoffner died of multiple injuries, principally to his lungs and chest, but his legs were not injured. From this evidence, the medical witnesses concluded that when struck Hoffner was lying prone in the highway rather than standing.

On the evening of June 21, Hoffner, a resident of Madison County, had gone with Ann Putnam and other friends to a restaurant in Charlottesville, where Hoffner and two others consumed beer. The group left Charlottesville about 11:00 or 11:30 and drove to Putnam's apartment in Madison County. Saying that he was going home, Hoffner, who seemed to be sad and tired, left shortly thereafter. Putnam, concerned that Hoffner might fall asleep, sent one of the others to follow him home. Sometime later, Hoffner was seen sitting in his truck at a filling station on the west

side of Route 29 across the highway from the scene of the accident.

Kreh, who also resided in Madison County, was called as an adverse witness by the Administratrix. He testified that he left the Ramada Inn in Charlottesville about 12:30 a.m. on June 22, driving north on Route 29. He stopped at a diner in Ruckersville and had breakfast and coffee before continuing north. As Kreh approached the scene of the accident, he was driving at a speed of 55 miles per hour (the speed limit), his headlights were burning, and he was watching the road. He did not recall seeing any physical impediments to his view ahead or any vehicles coming in the opposite direction in the southbound lanes. Kreh testified that he ran over Hoffner without seeing him.

Out of the presence of the jury, Kreh was questioned about his consumption of alcoholic beverages on the night of the accident. He had been attending a real estate seminar at the Ramada Inn. After his study session ended, he went to the cocktail lounge, where he had two drinks of Scotch and water and watched some backgammon games over a period of three hours before leaving. He said the drinks did not affect his ability to drive. This evidence was proffered by the Administratrix not to show that Kreh was intoxicated, but rather to show that the alcohol might have caused him to fail to maintain a proper lookout. The trial court ruled the evidence inadmissible as immaterial and speculative, subject to later reconsideration. When the evidence was proffered again, the court adhered to its earlier ruling.

In Kreh's cross-examination of Trooper Lyle, the court, over the Administratrix's objection, permitted the officer to testify about a test he conducted three nights after the accident. At the spot in the highway where Hoffner had been struck, Lyle had placed a dummy made from clothing similar to that worn by the decedent. Driving his police car north in the right-hand lane from a point several hundred yards south of the scene of the accident, Lyle testified, he could not see the dummy lying in the highway until he was within 20 to 30 feet of it.

At the conclusion of all the evidence, upon motion of the Administratrix, the trial court ruled that there was no evidence to justify submitting to the jury the question of Hoffner's contributory negligence.

■ We consider first the question of the admissibility of evidence of Kreh's consumption of alcohol. There was no evidence

that he was not fully alert when Trooper Lyle questioned him immediately after the accident. There was no evidence that there was any odor of alcohol on him at that time or that there was any irregularity in his speech, appearance, or actions. Indeed, at Trooper Lyle's request, Kreh drove his car to a nearby filling station to have the undercarriage examined. A member of the Rescue Squad observed that Kreh was "shaken up" by the accident, but she noticed no "unusual behavior" on his part.

. The Administratrix relies upon *Davis* v. *Sykes*, 202 Va. 952, 121 S.E.2d 513 (1961), and *Jackson* v. *Prestage*, 204 Va. 481, 132 S.E.2d 501 (1963). In *Davis*, the defendant offered evidence of his consumption of beer and then requested an instruction that would have told the jury that there was no evidence that he was intoxicated at the time of the accident. The plaintiff had not alleged intoxication, and the court rejected the instruction. We affirmed the ruling on the ground that there was no reason to instruct the jury on a nonexistent issue. 202 Va. at 955, 121 S.E.2d at 515. In *Jackson*, there was evidence of the odor of alcohol on the defendant, his consumption of four or five beers within an hour and fifteen minutes of the accident, and his erratic speech. We held that such evidence, tending to show intoxication, was admissible on the issue of negligence. 204 Va. at 484, 132 S.E.2d at 504.

The mere odor of alcohol, however, is not evidence of negligence. *Burks* v. *Webb, Administratrix*, 199 Va. 296, 305, 99 S.E.2d 629, 636 (1957). In the present case, there is not even evidence of the odor of alcohol. We hold that under the facts of this case, the trial court did not err in excluding evidence of Kreh's consumption of alcohol. *See Hemming* v. *Hutchinson*, 221 Va. 1143, 277 S.E.2d 230 (1981).

█ The dispositive question is whether the trial court erred in striking the plaintiff's evidence as to primary negligence and entering judgment for Kreh. In a negligence action, it is the plaintiff's burden to prove how and why the accident happened. We have stated the rule as follows:

Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff who alleges negligence to produce evidence of preponderating weight from which the jury can find that the defendant was guilty of negligence which was a proximate cause of the accident. The

evidence produced must prove more than a probability of negligence and any inferences therefrom must be based on facts, not on presumptions. It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover.

*Weddle, Administratrix v. Draper*, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963).

We have applied the rule in various cases in which vehicles have struck pedestrians. Thus, in *McManama v. Wilhelm*, 222 Va. 335, 281 S.E.2d 813 (1981), a pedestrian was struck and killed at an intersection. His administratrix sued the driver of the car, alleging that he drove at an excessive speed, failed to keep his vehicle under control, and neglected to maintain a proper lookout. The trial court sustained a motion to strike the plaintiff's evidence, and we affirmed the ruling. We noted that there was no evidence as to the decedent's "actions relative to the oncoming car prior to the accident." *Id.* at 340, 281 S.E.2d at 816. We held that by failing to show where, when, and how the decedent entered the intersection, the plaintiff failed to show that any negligence of the defendant was a proximate cause of the accident. *Id.*

In *Farren v. Gilbert*, 224 Va. 407, 297 S.E.2d 668 (1982), defendant was backing his truck into the unloading area of a nursing home. As he did so, he struck and killed a pedestrian who apparently had run behind the truck. We held that plaintiff had failed to make a prima facie case, as he did not show that defendant could have seen the decedent before the accident. *Id.* at 411-12, 297 S.E.2d at 671.

In the present case, the Administratrix has not shown how, when, or why Hoffner came to be on Route 29. There is no evidence, only conjecture, as to how he became prone in the lane of traffic. He may have fallen asleep, become ill, or sought to commit suicide. He may have rolled into the road from the shoulder just before Kreh's car reached him. There is no way to determine what happened, how long he had been in the road, or whether he had been walking, running, standing, or sitting before lying down.

The case was submitted to the jury only on the issue of Kreh's failure to maintain a proper lookout. It was the burden of the Administratrix, however, to show that Hoffner was in the road in time for a driver in the exercise of ordinary care to see and avoid

him, and the Administratrix failed to present evidence from which the jury reasonably could so find. We hold, therefore, that the trial court did not err in striking the evidence and entering judgment in favor of Kreh.

In view of this dispositive holding, we find that the question of the admissibility of evidence of the officer's test becomes moot and any error in admitting such evidence is immaterial. We will affirm the judgment of the trial court.

*Affirmed.*